UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEROME JOHNSON, | : |
| Petitioner, | : Civil Action No. 21-19193 (JHR) |
| v. | : **OPINION** |
| LAMINE N'DIAYE, | : |
| Respondent. | : |

**RODRIGUEZ, Senior District Judge**

**I.     INTRODUCTION**

Presently before the Court is *pro se* Petitioner Jerome Johnson's ("Petitioner") petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging due process violations in connection with a disciplinary hearing in the Federal Bureau of Prisons ("BOP"). (ECF No. 1.) Respondents filed an answer in opposition to habeas relief. (ECF No. 5.) For the reasons set forth below, the Court denies the petition for writ of habeas corpus.

**II.    BACKGROUND**

Petitioner is a federal inmate currently incarcerated at the Federal Correction Institution at Fort Dix ("Fort Dix"). (ECF No. 5-3 at ¶ 2.) On October 24, 2017, Petitioner was sentenced in this Court to a 168-month term of incarceration after pleading guilty to conspiracy to commit murder for hire, knowing transfer of a firearm for use in a crime of violence, and possession and use of a firearm in furtherance of a crime of violence, in violation of 21 U.S.C. §§ 924(c)(1)(A)(iii), 924(h), and 1958. *See United States v. Johnson*, No. 14-cr-173-2 (JHR) (D.N.J. Oct. 24, 2017), ECF No. 82 (judgment); ECF No. 5-4 at 3-4. Petitioner is scheduled to be released from federal custody in

December 2025. *See* https://www.bop.gov/inmateloc/ (search "Jerome Johnson"; last visited July 30, 2024).

The disciplinary sanctions that are subject to the current habeas petition arose from the following facts. On May 17, 2020, BOP Officer M. Krzewska issued an incident report describing Petitioner's alleged prison rule infractions as follows:

> On May 17th of 2020, I, Officer M. Krzewska, worked as a Unit Officer in 5812. At approximately 3:50 p.m. I conducted a walkthrough on the 1st floor in preparation for 4:00 p.m. Institutional Count. While walking into the TV/Computer room I noticed inmate, later identified as Johnson, Jerome Reg. No. 66451-050, standing near a computer desk. At this time[,] I came up to the computer desk and picked up an MP3 player that was plugged into a charger by that computer to randomly inspect it. At this moment inmate Johnson said to me "Can I have it? It is mine." I asked him to identify himself, which he did. I turned on the MP3 player and noticed it displayed "1983 days reman 66451050-Johnson, Jerome." I informed inmate Johnson that I was confiscating the MP3 player because it was altered as inmates are not able to upload more than fourteen (14) days on the MP3 players. Inmate Johnson then asked "so I can't have it?" I answered "No" and ordered inmate Johnson to clear the floor in preparation for 4:00 p.m. count. Upon returning to the officer's station I verified inmate Johnson's identity by utilizing Truscope and the Unit's Bed Book Roster.

(ECF No. 5-2 at 6.) In the incident report, Petitioner was charged with violation of disciplinary code 108 ("possession, manufacture, introduction, or loss of a hazardous tools"), and violation of disciplinary code 219 ("stealing; theft (including data obtained through the unauthorized access to disks, tapes, or computer printouts or other automated equipment on which data is stored)"). (*Id.*); *see* 28 C.F.R. § 541.3 (listing code violations in table). Code 108 is a "greatest severity level prohibited act" and Code 219 is a "high severity level prohibited act." *Id.*

An investigation of the incident was conducted by Lieutenant J. Marcucci, who notified Petitioner of his rights and provided him with a copy of the report. (ECF No. 5-2 at 9.) The report indicates Petitioner did not request witnesses, displayed a fair attitude during the investigation, and

made the following statement: "This is crazy, my MP3 has been missing for 2 months, I reported it to staff. I've been looking for it. I never even spoke to this Officer about any MP3 player yesterday." (*Id*.) Based on the information in the incident report, the evidence photo sheet, the confiscation sheet, and the chain of custody, Lieutenant Marcucci found Petitioner had "been appropriately charged with codes 108 & 219." (*Id.*)

On May 19, 2020, a Unit Disciplinary Committee ("UDC") was convened. (*Id.* at 6.) Petitioner told the UDC "I never talked to the officer. She never approached me. My MP3 player was stolen." (*Id.*) The Committee referred the charge to the Disciplinary Hearing Officer ("DHO") for further hearing. (*Id.*) Petitioner signed a form titled "Notice of Discipline Hearing Before the (DHO)," in which he indicated that he did not wish to have a staff representative, but did wish to call three witnesses, who could all testify that "[his] MP3 player was stolen." (*Id.* at 8.) He also signed a form titled "Inmate Rights at Discipline Hearing," acknowledging that he had been advised of various rights before the DHO, including: (1) the right to receive a written copy of the charges at least 24 hours before the hearing; (2) the right to have a staff member who is reasonably available to serve as a staff representative at the hearing; (3) the right to call witnesses, present witness statements, and introduce documentary evidence, "provided institutional safety would not be jeopardized"; (4) the right to make a statement or to remain silent; (5) the right to be present throughout the disciplinary hearing; (6) the right to receive written notice of the DHO's decision and the facts supporting the decision; and (7) the right to appeal. (*Id.* at 7.)

On July 22, 2020, DHO K. Hampton conducted Petitioner's disciplinary hearing. (*Id.* at 2-5.) Petitioner was advised of his rights, waived his right to a staff representative, and stated that he was "not guilty." (*Id.* at 2.) "No procedural issues were cited by [Petitioner] and no documentary evidence was provided for consideration." (*Id.*) Petitioner requested to call inmate Sepling Reg.

3

No. 14439-067, inmate Branham Reg. No. 48265-066, and inmate Buston Reg. No. 91325-083, as witnesses. (*Id.*) The DHO noted that Petitioner indicated that all three witnesses "would have the same testimony that [Petitioner] was not guilty of what the report staff member alleges." (*Id.* at 3.) Finding the three witnesses' testimony would be repetitive, the DHO chose to only call inmate Sepling as a witness. (*Id.*)

Based on the greater weight of the evidence, the DHO found Petitioner violated Code "(299) conduct which disrupts most like (219) stealing; theft." (*Id.*) The DHO dismissed the violation of Code 108 (possession of hazardous tool) charge. (*Id.*) The DHO credited the above cited incident report by BOP Officer Krzewska. (*Id.*) The DHO considered Petitioner's statement that he was not guilty and noted that Petitioner was unable to provide the DHO "with any significant/credible evidence to corroborate [his] claims." (*Id.* at 4.) The DHO also considered the statement from the witness that "somebody stole his MP3 three months prior to the incident." (*Id.*) Finally, the DHO considered the photograph "depicting a MP3 found in [Petitioner's] possession, located plugged into a computer with the display screen of the MP3 displaying 1983 days remain." (*Id.*) The DHO found that Petitioner and his witnesses provided inaccurate information for Petitioner to not accept responsibility for his actions. (*Id.*) The DHO found that "based upon the reporting staff members' eyewitness account of [Petitioner's] behavior, [his] observed/reported behavior/actions met the threshold for conduct which disrupts 299 most like stealing; theft 219." (*Id.*)

Based on his findings, the DHO imposed sanctions of disallowance of 27[1] days good conduct time, 30 days of disciplinary segregation, and 180 days of loss of visit privileges. (*Id.*)

---

[1] Respondent noted that although the DHO report indictes that 41 days of good conduct time would be disallowed, that was an error. (*See* ECF No. 5 at 11, fn. 4.) A printout of Petitioner's disciplinary history indicates that the BOP only disallowed 27 days of good conduct time as a result of this offense. (*See id.*, citing ECF No. 5-1 at ¶ 4, ECF No. 5-2 at 15.)

Petitioner was provided a copy of the report and was advised that he had the right to appeal within 20 days of the DHO decision. (*Id.*)

Respondent acknowledges that Petitioner exhausted the Administrative Remedy process. (ECF No. 5 at 12-13.)

In his § 2241 habeas petition, Petitioner seeks expungement of the DHO's decision based on due process violations, including: (1) Petitioner was not permitted to call his witnesses; (2) Petitioner was not permitted to present documentary evidence; (3) Petitioner was not afforded a staff representative at the hearing; (4) the DHO breached his authority by finding Petitioner guilty of a new charge without providing fair notice; and (5) the greater weight of the evidence does not support the DHO's finding of guilt. (*See generally* ECF No. 1.) Respondents argue that Petitioner was afforded his due process rights throughout the disciplinary process and the DHO's finding of guilty was supported by "some evidence," the applicable standard. (*See generally* ECF No. 5.)

### III.  STANDARD OF REVIEW

"Federal prisoners have a liberty interest in statutory good time credits." *Campbell v. Warden Allenwood USP*, 808 F. App'x 70, 72 (3d Cir. 2020) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); 18 U.S.C. § 3624(b)(1); *Vega v. United States*, 493 F.3d 310, 314 n.4 (3d Cir. 2007)). In *Wolff*, the Supreme Court described the minimum due process required before an inmate may be sanctioned with loss of good-time credits for violating a prison rule. 418 U.S. at 563-71. The due process protections include (1) written notice of the charges at least twenty-four hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in defense; (3) opportunity to receive assistance from an inmate representative; (4) a written statement of the evidence relied on and reasons for the disciplinary action; and (5) an appearance before an impartial decision-making body. *Wolff*, 418 U.S. at 563–567. Inmates are also entitled to a

"proceeding before an impartial decision-making body." *Campbell*, 808 F. App'x at 72. To that end, "due process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the prisoner's case." *Redding v. Holt*, 252 F. App'x 488, 491 (3d Cir. 2007) (citing *Wolff*, 418 U.S. at 592).

The Supreme Court later held that "some evidence" is the standard of review required to affirm an inmate's finding of guilt of a prison rule infraction. *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* The standard is met if any evidence in the record could support the conclusion by the tribunal. *Id.* at 455-56.

### IV.   DISCUSSION

In his habeas petitioner, Petitioner argues that his due process rights were violated during the disciplinary hearing process.

**A.  Denial of Witnesses**

Petitioner argues that his due process rights were violated when the DHO allowed only one of Petitioner's three requested witnesses to testify. (ECF No. 1 at 16-17.) Petitioner argues that he had requested three inmate witnesses, all of whom would have provided testimony that would corroborate his statement that he was not guilty. (*Id.*)

The DHO permitted Petitioner to call one of the three requested witnesses. The DHO noted that Petitioner indicated that all three witnesses "would have the same testimony that [Petitioner] was not guilty of what the report staff member alleges." (ECF No. 5-2 at 3.) Finding the three witnesses' testimony would be repetitive, the DHO chose to only call inmate Sepling as a witness. (*Id.*)

6

Inmates, however, do not have an "unqualified right to call witnesses." *Wolff*, 418 U.S. at 566. The Supreme Court in *Wolff* described the limited due process right to call witnesses and present documentary evidence as follows:

> Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution. We should not be too ready to exercise oversight and put aside the judgment of prison administrators. It may be that an individual threatened with serious sanctions would normally be entitled to present witnesses and relevant documentary evidence; but here we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases. Any less flexible rule appears untenable as a constitutional matter, at least on the record made in this case. The operation of a correctional institution is at best an extraordinarily difficult undertaking. Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments.

*Wolff*, 418 U.S. at 566–67. In declining to call two of the three proposed inmate witnesses to testify, the DHO considered Petitioner's assertion that all three witnesses would testify that Petitioner was not guilty of the charged disciplinary infraction. The DHO allowed one inmate witness to testify, finding that the remaining two witnesses' testimony would be repetitive. Given a prison official's recognized interest in avoiding disruption and interference with swift punishment for prison infractions, the DHO did not violate due process by exercising his discretion to proceed with one witness and not permit the remaining two witnesses with repetitive information to testify. *See*

7

*Moles v. Holt*, 221 F. App'x 92, 95 (3d Cir. 2007) ("Prison officials have broad discretion in administering a disciplinary hearing, and it is not a denial of due process to deny an inmate an opportunity to present witnesses 'whose testimony would be irrelevant, repetitive, or unnecessary.'") (quoting *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002)). Finally, for the reasons discussed below, corroboration of Petitioner's assertion that he was not guilty, and his MP3 player had been stolen would not have exonerated him from a finding of guilty under the "some evidence" standard of review. *See Pachtinger v. Grondolsky*, 340 F. App'x 774, 776-77 (3d Cir. 2009) (per curiam) (examining whether a prisoner was prejudiced by alleged denial of certain evidence at disciplinary proceeding). Therefore, any error in refusing two of his requested witnesses was harmless.

### B. Denial of a Staff Representative and Documentary Evidence

Petitioner next claims that the DHO denied him the right to present documentary evidence and to have the assistance of a staff representative. (ECF No. 1 at 7, 16.) Petitioner argues that it is "patently false" that he waived his right to a staff representative, as he was not offered a staff representative at any point during the disciplinary process. (*Id.*) Additionally, Petitioner claims that had a staff representative been assigned, that representative would have been able to provide evidence that Petitioner reported his MP3 player stolen more than three months prior to the incident at issue here. (*Id.*) Respondents reply that the record supports that Petitioner received notice of his right to a staff representative and waived that right. (ECF No. 5 at 18-19.) Respondents further reply that the DHO report indicates that "no documentary evidence was provided for consideration." (*Id.* at 16.)

The record indicates that Petitioner declined a staff representative on more than one occasion and offered no documentary evidence at his disciplinary hearing. Petitioner signed a form

8

titled "Notice of Discipline Hearing Before the (DHO)," in which he indicated that he did not wish to have a staff representative. (ECF No. 5-2 at 8.) He also signed a form titled "Inmate Rights at Discipline Hearing," acknowledging that he had been advised of various rights before the DHO, including, the right to have a staff member who is reasonably available to serve as a staff representative at the hearing. (*Id.* at 7.) Finally, the DHO Report also indicates that Petitioner declined a staff representative at the hearing and that Petitioner had "no documentary evidence to present." (*Id.* at 32-3.)

Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. "[T]he inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566. Here, the documented record contradicts Petitioner's assertion that he was not informed of his right to a staff representative and that he was denied the ability to present documentary evidence. Petitioner has failed to show that the DHO falsified the fact that Petitioner waived his right to a staff representative. *See* Federal Rule of Civil Procedure 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: consider the fact undisputed for purposes of the motion;" SECT 2254 Cases Rule 1 (scope of the rules) and Rule 12 ("[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.") Additionally, Petitioner does not identify what evidence he would have presented to the DHO, or how the absence of such evidence would have changed the outcome of his hearing.[2]

---

[2] Petitioner alleges that a "confiscation slip" pertaining to the confiscated MP3 player was never presented to the DHO. (ECF No. 1 at 17.) If this is the documentary evidence Petitioner is referring to, his claim is contradicted by the

9

Moreover, Petitioner has failed to show he would be entitled to habeas relief even if he was provided a staff representative or presented documentary evidence. The DHO based his finding upon BOP Officer Krzewska's eyewitness statement. Officer Krzewska was an eyewitness to the incident and reported that she saw the MP3 player plugged into a charger near a computer desk that Petitioner was standing near, and how after she picked up the MP3 player, Petitioner asked for it back, indicating that it was his. (ECF No. 5-2 at 6.) Officer Krzewska "asked [Petitioner] to identify himself, which he did." (*Id.*) The MP3 player displayed Petitioner's name and inmate registration number. (*Id.*) Officer Krzewska verified Petitioner's identity by "utilizing Truscope and the Unit's Bed Book Roster." (*Id.*) The DHO gave weight to the eyewitness reporting officer's account.

Even if the Court accepts that Petitioner was not informed of his right to a staff representative or to present documentary evidence, Petitioner has failed to show how a staff representative or documentary evidence would have changed the outcome of his DHO hearing. Petitioner fails to provide the Court with any documentary evidence that he would have presented to the DHO. Moreover, Petitioner does not provide the Court with a document to show that he reported his MP3 player stolen, which he now alleges a staff representative would have been able to present to the DHO. Petitioner has failed to show how any documentation would have disputed the officer's eyewitness account that Petitioner stated the MP3 player was his and identified himself. Petitioner has failed to show he was prejudiced by the lack of a staff representative or documentary evidence. *See Pachtinger*, 340 F. App'x at 776-77 (examining whether prisoner was prejudiced by alleged denial of certain evidence at disciplinary proceeding). Petitioner is not entitled to habeas relief on these claims.

---

record. The confiscation slip and chain of custody log were included in and attached to the investigation report. (ECF No. 5-2 at 9, 11-12.)

### C. Proper Notice of Charge

Petitioner next argues that he was denied his due process right to "fair notice" of the charges against him. (ECF No. 1 at 7, 18.) Petitioner claims the DHO violated his due process rights by changing the charged conduct from Code 219 to Code 299 (most like 219) without prior notice. (*Id.*)

Courts within the Third Circuit have rejected Petitioner's argument "that procedural due process is violated whenever the DHO finds an inmate guilty of an act that the inmate was not originally charged with." *King v. Ebbert*, No. 15-01937, 2016 WL 7365211, at *15 (M.D. Pa. Nov. 28, 2016) (collecting cases); *see Guerrero v. Recktenwald*, 542 F. App'x. 161, 164 (3d Cir. 2013) (not precedential) ("[T]hat the notice of the disciplinary hearing did not explicitly charge [the petitioner] with insolence is of no consequence because pursuant to 28 C.F.R. § 541.8(a)(1), a DHO has the authority to find that an inmate 'committed the prohibited act(s) charged, and/or a similar prohibited act(s) as described in the incident report.'"); *Milhouse v. Ebbert*, No. 1:15-CV-00013, 2016 WL 4448637, at *3 n.4 (M.D. Pa. Aug. 24, 2016) (holding that petitioner received sufficient due process because "the facts relating to the prohibited acts charged and those of which the DHO found [petitioner] guilty remained the same"); *Sanders v. Zickefoose*, No. 1:13-CV-1595, 2015 WL 4729831, at *8 (M.D. Pa. Aug. 10, 2015) ("When read in connection with *Wolff's* notice requirement, this Court has not hesitated to find that 28 C.F.R. § 541.8(f) authorizes a DHO to change, or amend, the misconduct charges on an incident report to conform to the charges which the evidence at a hearing later proves an inmate actually committed." ) "[H]owever, in order for a DHO to constitutionally change, or amend, a misconduct charge, after an inmate has been provided with a copy of the incident report, without the need to provide additional advance-written notice, the factual nature of the alleged prohibited conduct must remain the same." *Sanders*, 2015 WL

11

4729831, at *8 (citing *Northern v. Hanks*, 326 F.3d 909, 910–11 (7th Cir. 2003) (holding that the notice and report gave the petitioner all the information that he would need to defend against the amended or modified disciplinary charge)).

Here, the Court finds that Petitioner possessed all the information he needed to defend against the amended charge of a Code 299 violation because the DHO relied on facts that were contained in the incident report. The incident report charged Petitioner with and set forth facts regarding how he altered an MP3 player to be able to upload for more than the allowed fourteen days. The DHO considered these facts only in finding Petitioner violated code "(299) conduct which disrupts most like (219) stealing; theft." (ECF No. 5-2 at 2.) Thus, the factual nature of the alleged prohibited conduct did not change, despite the DHO's determination that Petitioner's misconduct was best characterized as a Code 299 violation. The DHO therefore, "acted within his authority to conclude that [Petitioner] committed a similar . . . offense t[o] the offense with which he was charged[,] and [Petitioner] received adequate notice of the proceedings against him." *Guerrero*, 542 F. App'x at 164.

Additionally, Petitioner does not allege how his strategy would have differed between defending against the two charges, nor does he allege that he would have presented different evidence. *Sanders*, 2015 WL 4729831, at *9 ("Sanders does not mention how his strategy . . . would have changed . . . at a new hearing. Similarly, Sanders does not cite to any new evidence that he would have presented, but did not present, or did not previously request to present, at the initial hearing.") Therefore, the Court finds that Petitioner received sufficient notice of the charge against him to satisfy due process. Petitioner is not entitled to habeas relief on this claim.

**D. Sufficient Evidence**

Petitioner's final claim submits that the greater weight of the evidence did not support a finding of guilt on the disciplinary offense of Code 299, conduct which disrupts, most like Code 219, stealing; theft. (ECF No. 1 at 7.) Petitioner argues that he can not be guilty because when the officer found the MP3 player charging, Petitioner was in a different room of the building. (*Id.*) Petitioner also submits that his MP3 player was stolen three months prior to this incident. (*Id.*) To the extent that Petitioner asks this Court to reweigh the evidence, that is not the duty of this Court. Unlike a DHO hearing, this Court need not decide whether the "greater weight of the evidence" supports any particular conclusion. Instead, when reviewing a DHO's decision resulting in the loss of good time credits, federal courts will uphold that decision as long as there was "some evidence" to support the DHO's findings and decision. *Hill*, 472 U.S. at 455–56. The standard is "minimal and does not require examination of the entire record, an independent assessment of the credibility of the witnesses, or a weighing of the evidence." *Lang v. Sauers*, 529 F. App'x 121, 123 (3d Cir. 2013) (per curiam) (citing *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989)). Instead, "the relevant inquiry asks whether 'there is any evidence in the record that could support the conclusion reached by the disciplinary board.'" *Id.* (quoting *Hill*, 472 U.S. at 455-56.)

Here, the DHO stated that he based his finding that Petitioner committed the prohibited act of conduct which disrupts, Code 299, most like Code 219, stealing; theft, on BOP Officer Krzewska's incident report, including that Petitioner identified himself to the officer and requested the MP3 player back. (ECF No. 5-2 at 3.) The DHO considered Petitioner's statement that he was not guilty and his witness statement that "somebody stole [Petitioner's] MP3 three months prior to the incident." (*Id.* at 4.) Also considered was the photograph of the MP3 with the display screen indicating 1983 days remain. (*Id.*) The DHO noted that Petitioner was unable to provide him with

13

"with any significant/credible evidence to corroborate [his] claims." (*Id.*) The DHO found that Petitioner and his witnesses provided inaccurate information in order for Petitioner to not accept responsibility for his actions. (*Id.*) The DHO's reliance on the eyewitness incident report and the photograph evidence is sufficient to meet the "some evidence" standard required to uphold prison disciplinary sanctions. *Hill*, 472 U.S. at 457 (some evidence standard was met where "the record [was] not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.") Therefore, Petitioner is not entitled to habeas relief on this claim.

V.   CONCLUSION

For the reasons discussed above, the Court denies the petition for writ of habeas corpus under 28 U.S.C. § 1915.

An appropriate Order follows.

Date: August 1, 2024

HON. JOSEPH H. RODRIGUEZ
United States District Judge